Garn, Executor, *v*. Garn.

No. 16,350.

GARN, EXECUTOR, *v*. GARN.

DECEDENT'S ESTATE.—*Election of Widow.—When may be Revoked.*—
Where the elements of estoppel are absent, and where it is evident
that the election of the widow is not the result of a reasonable un-
derstanding of the effect of the act, and where the act is sought to
be revoked within the statutory period for the exercise of the election
to take under the law, such revocation should be permitted.

| | |
|---|---|
| 135 | 687 |
| 141 | 476 |
| 135 | 687 |
| 144 | 454 |
| 135 | 687 |
| 149 | 367 |
| 149 | 368 |
| 135 | 687 |
| 166 | 360 |
| 167 | 610 |
| 167 | 618 |

From the Marshall Circuit Court.

*W. B. Hess* and *A. Johnson*, for appellant.
*J. D. McLaren* and *E. C. Martindale*, for appellee.

HACKNEY, J.—The question presented by the record
in this case, is as to the right of the appellee to revoke
and have rescinded an election, executed, acknowledged
and filed in the clerk's office, under and by which she
declared her acceptance of the provisions of the will of
her deceased husband.

The husband died January 29, 1890; the will was pro-
bated February 3, 1890, and the election to take under
the will was filed February 10, 1890. The petition al-
leges the desire of the widow to take under the law, and
to decline the provisions of the will. On the 25th day
of July, 1890, she executed an election to take under the
law, and to renounce the provisions of the will, which
election is filed with her petition, and is asked to be
made part of the records of the settlement of her hus-
band's estate.

It is further alleged that the petitioner was unac-
quainted with the English language; that she did not
know the extent and value of the property of her hus-
band's estate; that she did not know what proportion of
said estate she was entitled to receive under the will, or

under the law; that she was seventy-two years of age, was confined to her bed with *la grippe*, and in a high state of fever; that she had no counsel, was remote from attorneys, was surrounded by the children of the testator, who were interested in having her accept the provisions of the will; that said children, including the appellant, falsely represented to her that it was necessary for her to make an election, and that to take under the will she would receive the same as if she elected to take under the law; that believing their statements, and being greatly grieved from the loss of her husband, and afflicted with said disease, she consented to make the election so urged; that the appellant procured the attendance of a justice of the peace and procured his attorneys to prepare an instrument declaring such election, and that while she was unable to know or comprehend what was being done, they procured her signature, by mark, to said election; that, considering the value of the property, real and personal, it was in her interest to take the provision made for her, as widow, by the law.

The issue was joined by a general denial, and, upon the hearing, the court sustained the petition. The court permitted no inquiry by either party as to the value of the estate. There was evidence tending to establish the mental and physical condition of the petitioner, as alleged, that she was ignorant of the character and extent of the estate; that the appellant had advised her that she was required to exercise the right of election if she would respect the testator's will; and that she did not understand the provisions and effect of the will so far as its provisions related to her interests.

Under the act of April 13, 1885, Elliott's Supp., section 428, it is not required that the widow shall declare her election, if she decides that she will accept the provisions of the will. If she declines the provision made

for her by the will, then it becomes her duty to make an election. The privilege of so electing may be exercised at any time within one year from the probating of the will. The policy of the laws of this State has ever been to deal liberally with the widow in the distribution of her husband's estate.

While the exact question before us has not been decided in this State, it is certain that the Legislature and the courts have never departed from this policy. In line with this policy, it has been decided by the courts of other States that the right of the widow to make her election understandingly, is guaranteed to her by the law, and should be respected by the courts, by the heirs and by strangers. *Elbert* v. *O'Neil*, 102 Pa. St. 302; *Evans's Appeal*, 51 Conn. 435; *Cowdrey* v. *Hitchcock*, 103 Ill. 262; *Hall* v. *Hall*, 2 McCord Ch. 269; *Snelgrove* v. *Snelgrove*, 4 Desaussure's Eq. 274; *Sill* v. *Sill*, 31 Kan. 248; *Kidney* v. *Coussmaker*, 12 Ves. 136; *Akin* v. *Kellogg*, 39 Hun. 252; *Estate of Woodburn*, 21 Am. St. Rep. 932; 2 Williams on Executors, p. 1449 and notes.

As to those mistakes of law and of fact, generally, from which relief may be had, see *Black* v. *Ward*, 27 Mich. 191, and note to same case in 15 Am. Rep. 162.

In *Evans's Appeal, supra,* a case not so strong as the present, it was said: "This may well be regarded as a case of misapprehension as to rights without fault; as a mistake from the effects of which a court of equity has power to grant relief." See, also, *Macknet* v. *Macknet*, 29 N. J. Eq. 54.

In *Estate of Woodburn, supra,* the facts were hardly so strong in favor of the widow as those presented in the case before us. The court said: "While there is no allegation that the widow was intentionally deceived or misled, yet the fact remains that she signed the paper in

ignorance of her rights, without any attempt on the part of the executor to inform her of them, or of the effect of the paper to which he procured her signature.    Indeed, he appears to have been ignorant upon the subject himself.    The authorities are clear that nothing less than unequivocal acts will prove an election, and they must be done with a knowledge of the party's rights, as well as of the circumstances of the case.    Nothing less than an act intelligently done will be sufficient.    She should know, and if she does not, she should be informed, of the relative values of the properties between which she was empowered to choose; in other words, her election must be made with a full knowledge of the facts.    The rule applies with especial force where the widow is called upon, as in this case, to make her election shortly after her husband's death.    *Anderson's Appeal*, 36 Pa. St. 492; *Cox* v. *Rogers*, 77 Pa. St. 167; *Bierer's Appeal*, 92 Pa. St. 266.''

And we may add that the application of the rule should be made with still greater force when the widow is not only prostrated with grief from the recent loss of her husband, but is aged, is unacquainted with the language she is required to adopt, and is afflicted with disease rendering her helpless to comprehend and transact business of such great importance as the election of her rights and interests in the estate of her deceased husband.

It should not be overlooked that an election to take under the will, is not required.    An affirmative election to accept the provisions of the will, adds nothing to the force of the statute.    Therefore, any act which will preclude the exercise of that privilege which is given expressly by the statute, must be of such force and effect as to constitute an estoppel.

Here, the act done is induced by the appellant; the

Garn, Executor, *v.* Garn.

doing of the act does not mislead any one; no interests attach on the faith of the act; nothing is parted with by those who would receive benefits from the act; innocent parties are not made to suffer from the act; no advantage is received or retained by the widow as the result of the act.    Essential elements of an estoppel are absent as a question of pleading, and as a question of evidence.

We do not hold that in every instance the widow may withdraw an election to take under the will, but where the act is induced by fraud, or where an intelligent exercise of the privilege of the statute is defeated, and innocent parties do not suffer, there is strong reason to permit the exercise of the privilege understandingly.    In such a case, it should not be necessary to show that degree of fraud which would set aside a contract executed in the vigor of health, with a full understanding of the facts; or with opportunities to be advised of all interests involved.    Indeed, it may be doubted if actual fraud is necessary, while its existence is certainly sufficient to avoid an election.    See *Fosher* v. *Guilliams, Exec.,* 120 Ind. 172.

Where the elements of an estoppel are absent, and where it is evident that the election is not the result of a reasonable understanding of the effect of the act, and where the act is sought to be revoked within the statutory period for the exercise of the election to take under the law, such revocation should be permitted.    Such is the case before us.

Finding no error in the record, the judgment of the circuit court is affirmed.

Filed Nov. 28, 1893.