Burden *et al. v.* Burden.

Filed May 28, 1895.

---

No. 17,049.

## BURDEN ET AL. *v.* BURDEN.

ELECTION BY WIDOW.—*When Will be Canceled and Set Aside.—Fraud. —Decedent's Estate.*—Where, by means of fraud or other contrivances or acts of those interested in the estate of her deceased husband, the widow is prevented from exercising the right of electing whether she will take under the law, or is thereby procured to execute an instrument or to do an act which would serve, if permitted to stand, to estop her from electing to retain her rights under the law,—a court of equity, upon application made within the statutory limit for her to exercise the right of election, will interpose and grant her the necessary and proper relief, upon proper averment and showing of such fact.

SAME.—*Setting Aside.—Actual Fraud Not Necessary.*—Actual fraud, in cases of this kind, is not alone necessary to authorize equitable relief, but its existence in any particular case, under the rules governing other actions for relief against fraud, is undoubtedly sufficient.

SAME.—*Complaint to Set Aside.*—*Essential Averments.*—In an action to set aside an election as fraudulently procured, the complaint should show that she desired to renounce the provisions made for her by the will, and desired to elect to take under the law, but is prevented from doing so by the election fraudulently procured; a copy of such election should be made a part of the complaint; the complaint should aver that she relied upon the fraudulent representations made to procure her election, and believed them to be true, or that they were in fact false.

FRAUD.—*How Pleaded.*—*Misrepresentations.*—One who relies upon fraud must plead all the facts constituting the same, and in case of misrepresentations they must be concerning a material fact, and not concerning matters equally within the knowledge of both parties, and that the party relying on the same did not, and could not, know the falsity thereof.

From the Delaware Circuit Court.

*J. N. Templer, E. R. Templer* and *W. W. Orr,* for appellants.

*J. W. Ryan* and *W. A. Thompson,* for appellee.

JORDAN, J.—Appellee, who is the widow of the testator, Nehemiah Burden, filed her complaint in the lower court against the executor and legatees of the last will of said Nehemiah.

Omitting the formal parts the complaint is as follows:

"The plaintiff complains of the defendants, and says that she was a second wife and is the widow of the deceased, with whom she intermarried in 1876; that to said parties no children were born; that she is now 67 years of age, and illiterate, ignorant, timid old woman, with nothing but an obscure domestic experience of life, utterly and demurely ignorant of business, law and property rights; that the defendants, except the executor whose wife is a daughter, are the heirs and all the heirs of the deceased, and are all adult, except Albert DeHaven, Maud DeHaven, George Barkman and John Barkman, who are minors; that her husband executed his said will on the 28th day of October, 1892, and died

on the 14th day of December, then next following; that
her said husband died the owner of an estate consisting
of real and personal property of between forty and forty-
five thousand dollars, making plaintiff and his heirs
aforesaid his devisees—devising the whole estate to said
heirs, except the sum of fifteen hundred dollars and no
more, which he bequeathed to plaintiff; that at the date
of her husband's death he was indebted to her in the
neighborhood of seventeen hundred dollars, for a por-
tion of which she held her husband's notes, and the re-
mainder was the open account, and for the payment of
which sum no provision was made, as she learned in said
will; that Elisha Bartlett, the father of the executor, who
is a keen, cunning, officious man, with much experience
in the management and direction of business affairs of
his neighbors, and Otho Dowden is a lawyer, both of
whom had much to do in the making of decedent's will,
and the disposition of his property, and were acting
in the interests and as the instruments of the defend-
ants and against those of this plaintiff. And the said
Bartlett had been much with her husband during
his sickness and prior to, and at the time of the making
said will, and exercised great influence on him in the
making of said will, and the disposition of his said es-
tate; that plaintiff was not permitted to be present when
his said will was made, although at her home, and all
knowledge of the contents and provisions were kept from
her during her husband's lifetime, and only learned it
in a general way after his death, from said Bartlett and
Dowden, what the provisions of said will were, and had
never heard the same read or explained; that her hus-
band died after a long and helpless illness of Bright's
disease, and for many months this plaintiff was continu-
ously with him by night and by day; that on the 29th
day of December, fourteen days after the death of her

husband, while she was yet broken down with grief, fatigue and long vigils and exposure at her suffering and dying husband's bedside, and at a time when she was alone entirely, except to be surrounded by those who were unfriendly to her—the defendants. The defendants, by themselves and their agents and attorneys, fraudulently and deceitfully, wrongfully and covertly came upon her suddenly and unexpectedly in her loneliness and quiet, and then and there, for the wrongful and fraudulent purpose of cheating and defrauding her out of her just and proper interests in her husband's estate, and her just and well known and lawful claim against said estate, represented and said to her that for the purpose of protecting her interests and securing to her her interest therein, and securing her claim against said estate, that it was necessary for her to sign her part of her husband's will, and a paper which they said to her was a quitclaim deed to enable the children to partition said estate so they could farm their respective portions this year, and the other papers were a part of her husband's will.

"She avers she said to them she did not wish to sign any paper, as she had no friends or lawyer to advise her or explain the purpose to her; that she wanted to have and secure her proper interest in her husband's estate, and her claim against it; said defendants as aforesaid still cunningly, fraudulently and deceitfully pressed and urged her to sign the said paper; and she avers that she knew nothing of widow's election, widow's portion or that widows had the option to accept under the will of her husband or under the law, and that no explanations were made to her, no information was given her, and she was still urged that it was necessary for her to sign such paper in order to give effect to her husband's will, and she was thereby fraudulently and wrongfully trapped into executing a written election to accept the provision

of $1,500 made for her in said will, and her interest in said estate, as such widow, worth at least $8,000, and a quitclaim deed to her deceased husband's entire estate to defendants, reciting therein a consideration of $700, when in truth and in fact she was not paid one cent, and was and has been, by such fraudulent representation, conduct and coercion, defrauded out of her interest in ,said estate, and her claim against the same, to her great damage.

"Wherefore she prays the court for an order and judgment revoking said election and declaring the same null and void, and an order setting aside and annulling and declaring void said quitclaim deed, and for all proper relief."

The sufficiency of this pleading to constitute a cause of action was assailed by a demurrer in the lower court upon the part of some of the appellants, and is challenged in this court by an assignment of error.

The assignment that the court erred in overruling the demurrer, and the one that the complaint is not sufficient, will be considered together.

From an inspection of this pleading we think it is apparent, as contended by counsel for appellee, that it is replete with ambiguities and omissions. The object of the action herein, and the result sought to be obtained thereby, is equitable relief in annulling and setting aside a written election upon appellee's part to take under the will of her late husband, and also to set aside a quitclaim deed, executed by her under the alleged circumstances and facts. The evident theory or pith of the complaint is that of fraud, perpetrated upon appellee by the appellants in procuring the execution of the instruments in question.

It is provided, by section 2666, R. S. 1894, "that if lands be devised to a woman, or pecuniary or other pro-

visions be made for her by the will of her husband, in lieu of her right to lands, * she shall take under the will * unless she shall make her election whether she will take the lands so devised, or the provision so made, or whether she will retain the right to one-third of the land, etc." Such election shall be in writing, made within one year from the probate of the will, acknowledged, filed and recorded. Under this provision of the statute, as amended in 1885, the widow of the testator is required to elect within the time as therein provided, or her rights will be controlled by the will. *Fosher* v. *Guilliams, Exr.,* 120 Ind. 172; *Garn, Exr.,* v. *Garn,* 135 Ind. 687.

She is not required to make her election to take under the will, but she is required, in effect, to renounce the provisions made for her therein and to elect to retain her rights under the law. Therefore, any act which will bar her from exercising this statutory privilege of election must be in its nature of such force and effect as to constitute an estoppel. *Garn, Exr.,* v. *Garn, supra.*

Where, by the means of fraud or the contrivances or acts of those interested in the estate of her deceased husband, the widow is prevented from exercising this right of election, or is thereby procured to execute an instrument or to do an act which would serve, if permitted to stand, to estop her from electing to retain her rights under the law, a court of equity, upon application made within the statutory limit for her to exercise this right of election, will interpose and grant to her the necessary and proper relief upon the proper averment and showing of such facts. This doctrine is supported by the decisions of *Fosher* v. *Guilliams, Exr.,* and *Garn, Exr.,* v. *Garn, supra,* and cases there cited.

Actual fraud in cases of this kind is not alone necessary to authorize equitable relief, but its existence in any particular case under the rules governing other actions

for relief against fraud, is undoubtedly sufficient. The question in the case at bar with which we have first to deal is not one of evidence, but that of sufficient pleading of the facts upon which the relief is demanded.

If the complaint can be held to be sufficient in this cause it must be by force of the facts therein averred. We can not change the pleading by extending or limiting the effects of the same.

As we have said, the pith or gist of the issuable facts averred therein is that of fraud, and its sufficiency to constitute an actionable wrong or injury must be tested by the rules controlling in action, based upon fraud.

Recurring again to the charging part of the complaint and we find the following averments:

"That the defendants, by themselves and their agents and attorneys, fraudulently, deceitfully, wrongfully and covertly came upon her suddenly and unexpectedly in her loneliness and quiet, and then and there, for the fraudulent and wrongful purpose of cheating and defrauding her out of her just and proper interests in her husband's estate and her just and well known and lawful claim against said estate, represented and said to her that for the purpose of protecting her interest and securing to her her interest therein and securing her claim against said estate, that it was necessary for her to sign her part of her husband's will and a paper, which they said to her was a quitclaim deed, to enable the children to partition said estate so they could farm their portions this year, and the other papers were a part of her husband's will. She avers that she said to them she did not want to sign any paper, as she had no friends or lawyer to explain the purpose to her; that she wanted to have and secure her proper interest in her husband's estate, and her claim against it. Said defendants, as aforesaid, still cunningly, fraudulently and deceitfully pressed and

urged her to sign the said paper, and she avers that she knew nothing of widow's election, widow's portion, or that widows had the option to accept under the will of her husband or under the law, and that no explanation was made to her, no information given, and she was still urged that it was necessary for her to sign such paper in order to give effect to her husband's will; that she was thereby fraudulently and wrongfully trapped into executing a written election to accept the provision of $1,500 made for her in said will and her interest in said estate as such widow, worth at least $8,000, and a quit-claim deed to her deceased husband's entire estate to defendants, * * * and was and has been by such fraudulent representations, conduct and coercion defrauded out of her interest in said estate and her claim against the same to her damages, etc.''

No where does the complaint allege or show that the appellee desired to renounce the provisions made for her by the will, and desired to elect to take under the law, and was prevented from so doing by the alleged fraud of the appellants in procuring the written election in question. No copy of the written election is filed as an exhibit, or nothing in regard to its terms or contents is alleged, so that we may be apprised of its character, and determine as to whether it in any manner tended to estop or affect appellee in exercising her right of election under the law. There is no averment or showing that she relied upon the representations made by the defendants and believed them to be true, or that they were in fact false. The complaint abounds in epithets and conclusions, but there is an absence of material facts going to constitute fraud, and the pleading lacking in these is thereby rendered bad.

A complaint based upon fraudulent representations must aver that the party complaining relied upon the

same. *Goings* v. *White*, 33 Ind. 125. One who charges fraud must plead all the facts constituting the same, for, as the presumption is in favor of fair dealing, nothing is to be taken by intendment or inference. *Conant* v. *National State Bank, etc.*, 121 Ind. 323.

Misrepresentations must be concerning a material fact, and not concerning matters equally within the knowledge of both parties, and it must appear that the party relying upon the same could not, or did not, know the falsity thereof. *Jagers* v. *Jagers*, 49 Ind. 428, and cases there cited.

It is urged by the learned counsel for appellee, that the complaint in this action contains averments similar to those in the case of *Garn, Exr.*, v. *Garn, supra.* In this contention, however, they are mistaken. Several of the essential facts set forth in the complaint in that case do not appear in the pleading under consideration; if they did, a different question would be presented.

Other objections might be and are urged against the complaint, but we deem it unnecessary to consider the same, and thereby extend this opinion. In its present state it is wholly insufficient to constitute a cause of action or serve as a proper and valid basis for the judgment or decree which appellee seeks thereby to obtain, and for this reason alone the judgment must be reversed. Other questions are presented and argued by the appellants, but these may not again arise upon another trial, and are, therefore, not considered. However, we may suggest that if appellee received anything of value from appellants, growing out of the alleged execution by her of the instrument in question, she at least ought to aver that fact in her complaint, and allege her willingness and readiness to surrender the same as the court may order or decree. See *Shaw* v. *Barnhart*, 17 Ind. 183;

*Higham* v. *Harris,* 108 Ind. 246, and cases cited; *West-hafer* v. *Patterson,* 120 Ind. 459.

Judgment reversed, with instructions to the trial court to grant a new trial, and sustain the demurrer to the complaint with leave to appellee to file an amended one, and for further proceedings in accordance with this opinion.

