## Studabaker *v.* Faylor et al.

[No. 21,219. Filed February 25, 1908. Rehearing denied June 2, 1908.]

1. QUIETING TITLE.—*Ejectment.*—*Evidence.*—*Insanity.*—Under an ordinary complaint to quiet title, or for ejectment, on behalf of the heirs of a deceased grantor, evidence of such grantor's mental incapacity is admissible, and the question of placing the defendant grantee *in statu quo*, could not arise upon the complaint, but could arise only upon the evidence. p. 503.

2. SAME.—*Ejectment.*—*Insanity.*—*Setting Aside Conveyance for.*— Under an ordinary suit to quiet title, or an action in ejectment, a conveyance of lands by a person of unsound mind may be avoided. p. 504.

3. DEEDS.—*Voidable.*—*Grantors.*—*Insanity.*—*Notice.*—*Avoidance.*— *Equity.*—A deed executed by a person of unsound mind, the grantee having no knowledge of such condition, is voidable only; and in such case the grantee is entitled to be placed *in statu quo* before such avoidance can be effected. p. 504.

4. PLEADING. — *Complaint.* — *Inferences.* — *Evidence.*—A complaint must directly allege every necessary fact entitling the plaintiff to a recovery; but inferences may be drawn in determining whether certain necessary facts are proved by the evidence. p. 505.

5. SAME.—*Complaint.*—*Deeds.*—*Setting Aside.*—*Insanity.*—*Knowledge.*—A complaint alleging that the grantor in a deed was eighty-five years old, blind, paralyzed and feeble in body, is insufficient to show that the grantee in dealing with her must have known that she was a person of unsound mind. p. 505.

6. SAME.—*Complaint.*—*Deeds.*—*Avoidance.*—*Mental Unsoundness.* —*Equity.*—A complaint to set aside a deed because of the grantor's insanity, where it fails to allege that the grantee had knowledge thereof, must show a restitution of the consideration, or offer thereof. p. 505.

7. SAME. — *Complaint.* — *Theory.* — *Change of, on Appeal.* — The theory of a complaint adopted by the trial court, and upon which the case was tried, cannot be changed on appeal. p. 506.

8. SAME.—*Complaint.*—*Setting Aside Conveyance for Fraud.*—A complaint to set aside a conveyance because of the grantee's representations, must show that such representations were false, or fraudulent. p. 507.

9. SAME. — *Complaint.*—*Conveyances.*—*Fraud.*—*Presumptions.* —A complaint to set aside a conveyance because of the grantee's fraud in procuring same, must state specifically the facts constituting such fraud, fraud never being presumed. p. 507.

10. WITNESSES. — *Parties.*—*Decedents' Estates.*—*Heirs.*—*Opinions.*
—*Insanity.*—In a suit by heirs of a grantor to set aside her conveyance because of her insanity, such heirs are competent witnesses to detail facts occurring in her lifetime and from such facts to give their opinions as to her sanity. p. 508.

11. SAME.—*Death.*—*Testimony at Former Trial.*—*How Proved.*— Any person who heard a decedent's testimony at a former trial of the pending case is competent to testify thereto, though there was an official stenographer and his notes are available, the weight of the testimony being for the jury. p. 508.

From Adams Circuit Court; *Richard K. Erwin,* Judge.

Suit by Thomas Faylor and others against David D. Studabaker. From a decree for plaintiffs, defendant appeals. Transferred from Appellate Court under subd. 2, §1394 Burns 1908, Acts 1901, p. 590, §10. *Reversed.*

*W. H. Eichhorn, George A. Matlack, U. S. Lesh, John Burns* and *D. E. Smith,* for appellant.

*Dailey, Simmons & Dailey, Sturgis & Stine* and *Mock & Sons,* for appellees.

JORDAN, J.—Appellees, the heirs of Catherine Faylor, deceased, commenced this suit in the Wells Circuit Court to set aside a deed of conveyance executed by her on April 1, 1901, whereby she conveyed to appellant certain real estate situated in Wells county, Indiana. The complaint is in four paragraphs, to each of which appellant demurred for insufficiency of facts. This demurrer was overruled, and proper exceptions reserved. Answer, the general denial. Upon the issues formed a trial was had in the Wells Circuit Court before a jury, which resulted in a verdict for appellees. Appellant, upon his application, was awarded a new trial as a matter of right under the statute. The venue of the cause was then changed to the Adams Circuit Court, wherein a third trial was had before a jury, which resulted in a verdict in favor of appellees.

Over appellant's motion for a new trial judgment was rendered upon this verdict, from which he appeals, and assigns as errors the overruling of his demurrer to each para-

graph of the complaint, and the overruling of his motion for a new trial.

The third paragraph of the complaint is to quiet title, under §1116 Burns 1908, §1070 R. S. 1881, 2 Thornton's Civil Code, §873, to the lands therein described, and the fourth is a statutory complaint in ejectment, under §1096 Burns 1908, §1050 R. S. 1881, 2 Thornton's Civil Code, §853, to recover possession of the lands in controversy, and for damages for the detention thereof. The sufficiency of the latter two paragraphs is not controverted by appellant.

The following may be said to be a fair statement of the facts alleged in the first paragraph of the complaint: It discloses that Catherine Faylor died intestate on July 8, 1902, leaving the appellees as her heirs at law; that on April 1, 1901, and also at the time of her death, she was the owner of the lands described in the complaint, being 216 acres, 123 of which she held in fee simple and a life estate in the remaining ninety-three acres; that the value of the 123 acres at the time of the execution of the deed in question is averred to have been $12,000; that on said April 1, 1901, the defendant procured said Catherine Faylor to execute to him a pretended deed containing covenants of general warranty purporting and pretending to convey to him said described real estate, situated in Wells county, Indiana; that at the time said Catherine Faylor made the pretended deed in question she was about eighty-five years old and was greatly enfeebled and debilitated both in mind and body; that she was blind and paralyzed, and was in such a condition mentally that she was of unsound mind and incapable of comprehending the nature of a contract and deed; that the sole and only consideration for said deed was that the defendant should leave to said grantor, Catherine Faylor, the exclusive possession and use of the brick dwelling-house situated on the premises conveyed, together with the garden and appurtenances to said dwelling, for and during her natural life; that the defendant was to

plant and attend to her garden, furnish and provide her with vegetables, provisions, groceries and household necessities, and procure a suitable and satisfactory person to live with and take care of her; that he was to transact all of her business affairs, and at her death he was to carve her name upon the tombstone of her deceased brother, Thomas Faylor. The paragraph then alleges facts to show a disaffirmance of the conveyance on the part of the plaintiffs, and alleges that they are the legal owners of the real estate described, and that the defendant, ever since the pretended execution of said pretended deed, has been in possession of said premises, enjoying the rents and profits thereof, which are of the value of $900 per year. The prayer is that the deed be set aside, and that plaintiffs be declared to be the owners of said real estate, and for all other and proper relief.

The second paragraph, after averring that the plaintiffs are the heirs of Catherine Faylor, who died intestate on July 8, 1902, alleges that said Catherine Faylor, on April 1, 1901, was the owner of the lands described in the complaint, being 216 acres, 123 of which she owned and held in fee simple, and that this tract was valued at $12,000, and the remaining ninety-three acres she held as a life tenant; that on April 1 she executed a pretended deed purporting to convey all the aforesaid described lands to the defendant; that at the time said Catherine made this pretended deed to the defendant she was about eighty-five years old, was blind and paralyzed, and was greatly enfeebled and debilitated in both mind and body, so much so that she was of unsound mind, and was incapable of comprehending the nature of a contract or deed; that the mental condition of said Catherine Faylor was well known to the defendant at the time he procured the pretended execution of said deed and possession of said real estate; that he, knowing said facts, for the purpose of procuring possession of said real estate, and of cheating and defrauding said Catherine Faylor out of

the same, fraudulently represented to her that he was her friend, and truly sympathized with her in her loneliness and helplessness, that her relatives were a worthless "broken-up set," and cared nothing for her, that her nephew, Peter Faylor, was then engaged in an effort to send her to the poorhouse, that her niece, Elizabeth Stout, who had waited upon and cared for her a number of years prior to the time of said conveyance, cared nothing for her, and was also engaged in an effort to send her to the poorhouse, and that both said Peter Faylor and Elizabeth Stout, who had been actively concerned in looking after her interests, made him and her trouble every time they came upon the premises, and that he was going to order them off; that in addition thereto the defendant made to said Catherine Faylor great protestations of love and affection; that, by reason of her unsoundness of mind and said false and fraudulent representations so made by said defendant to said Catherine Faylor, which she believed to be true, and which she relied upon, he procured thereby the conveyance to himself of said land, for the pretended consideration of permitting her to live in her own dwelling-house, using the garden which he was to attend to for her, furnishing her such garden vegetables as she might need, doing her chores, furnishing her a person to live with and care for her, and carving her name upon the tombstone of her deceased brother, Thomas Faylor. Then follow averments of facts to show the disaffirmance upon the part of the plaintiffs, and the allegation that defendant, since the execution of said pretended deed, has had possession of said real estate and received the rents thereof, amounting to the sum of $900 per year. The prayer is that the deed in controversy be set aside, and that plaintiffs be declared to be the owners of said real estate, and for all other and proper relief.

It appears to be conceded by the parties to this suit that the first paragraph of the complaint, under the facts therein

averred, proceeds upon the theory that Catherine Faylor, the deceased, at the time of the alleged execution of the deed of conveyance by her to appellant, was a person of unsound mind, but that she had not been judicially held to be such a person and placed under guardianship, therefore her deed in question was merely voidable. The infirmities imputed to this paragraph by appellant are (1) that it does not by any positive averments disclose that he, at the time he dealt with her and obtained the deed in controversy, as alleged, had any notice or knowledge that she was of unsound mind; (2) that the pleading on its face discloses that the deceased survived for over fifteen months after the execution of the deed to appellant, and that during this period of time it must be assumed, as there is nothing in the paragraph to the contrary, that he discharged his duty under his agreement by performing the services and all the obligations which constituted the consideration for the conveyance, viz., planting and attending said Catherine's garden, furnishing and providing her with vegetables, groceries, provisions and household necessaries, and in procuring for her a suitable person as a caretaker; that, in addition to this, he, as obligated, transacted all of her business affairs. It is argued that these things must be considered as necessary to said Catherine and for her benefit; but notwithstanding it is so asserted, appellees in their pleading make no offer of restitution or in any manner to compensate appellant for his services and outlay in behalf of the deceased; or, in other words, that they make no offer whatever in their pleading to do equity in the premises. Had appellees been content not to plead specially, as they do in their first paragraph of complaint, in order to set aside the deed of Catherine Faylor upon the ground of her insanity, but had abided by the third and fourth paragraphs of the complaint to avoid the deed on the ground of mental incapacity of the grantor, then appellant, in re-

spect to these paragraphs, could not have advanced the aforesaid points or propositions, but if they were available they would be limited to the proof in the trial of the cause. *Fay* v. *Burditt* (1882), 81 Ind. 433.

That a conveyance of lands by a person of unsound mind may be assailed and avoided, in a suit to quiet title or an action in ejectment, under §§1096, 1116, *supra*, by a 2. person or persons entitled to maintain the same, is well settled. *Brown* v. *Freed* (1873), 43 Ind. 253; *Freed* v. *Brown* (1876), 55 Ind. 310; *Burt* v. *Bowles* (1879), 69 Ind. 1; *Grissom* v. *Moore* (1886), 106 Ind. 296, 55 Am. Rep. 742; *Stanley* v. *Holliday* (1891), 130 Ind. 464.

The general, prevailing rule in this jurisdiction is that a deed made by a person of unsound mind before office found, to a person who has no knowledge of such 3. grantor's mental incapacity, is voidable only. Under such circumstances if the grantee, without knowledge of the grantor's mental incapacity to execute the deed or contract in controversy, has dealt fairly with him, he is entitled to be placed *in statu quo* before the avoidance of the deed or contract. *Boyer* v. *Berryman* (1891), 123 Ind. 451, 452, and cases cited; *Thrash* v. *Starbuck* (1896), 145 Ind. 673.

Consequently in such cases the fact that the party dealing with the *non compos mentis* had knowledge of his mental incapacity is material upon the question as to whether he is entitled to be placed *in statu quo* before there can be avoidance of the deed in question. This court, in *Thrash* v. *Starbuck, supra,* affirmed in effect that restitution was not necessary in an action in which it is alleged that the grantee took the conveyance in controversy with knowledge of the mental condition of the grantor and obtained therein an unconscionable advantage. See, also, *Judd* v. *Gray* (1901), 156 Ind. 278.

In considering the first paragraph of the complaint on the question of appellant's knowledge of the mental inca-

pacity of Catherine Faylor at the time he obtained the deed in controversy, it must be remembered that we are dealing with a question of pleading, and not with one in regard to the proof under the evidence. The material facts in a case as a matter of pleading must be directly and positively averred, while in regard to evidence, conclusions may be inferred from the facts or circumstances proved in the cause. *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290; *Pittsburgh, etc., R. Co.* v. *Peck* (1905), 165 Ind. 537.

Hence in the case at bar we are not warranted, as is insisted, in assuming that because Catherine Faylor was eighty-five years old, blind, paralyzed and feeble in body, that appellant in dealing with her in respect to the conveyance of the land must have known that she was of unsound mind; or that from these facts alone knowledge of her mental condition must be imputed to him. If the question arise, upon the facts mentioned, as to whether the jury or court in the trial of the cause would be warranted in inferring therefrom that appellant had knowledge of her mental incapacity, it would present quite a different proposition.

In the absence of anything in the paragraph to show the contrary, we cannot assume that appellant did not, during the period of time intervening between the execution of the deed and the date of the death of the deceased, furnish to her that part of the consideration for the deed which, as shown under the facts disclosed by the pleading, consisted of his cultivating her garden, providing her with vegetables, groceries and other provisions and household necessities, procuring for and furnishing her with a satisfactory caretaker, and doing and transacting her business affairs. As there is an entire absence of any averment in the first paragraph of the complaint to show that appellant, at the time he dealt with the deceased, had knowledge that she was a person of unsound

mind, it would be necessary that he be placed *in statu quo* before appellees would be entitled to avoid the deed; or, in other words, he should be reasonably compensated for any beneficial services which he performed for the deceased and repaid for any money that he may have expended for her benefit as a consideration for the conveyance in question. At least appellees should in their pleading have offered to make restitution to him. Under such an offer the court could have so molded its decree as to adjust all matters between the parties and protect whatever rights, if any, appellant was entitled to. *Rohrof* v. *Schulte* (1900), 154 Ind. 183, and cases cited; *Burden* v. *Burden* (1895), 141 Ind. 471, 479.

It follows, and we so adjudge, that the first paragraph of the complaint is insufficient in failing to show therein an offer by appellees to make restitution to appellant, and thereby place him *in statu quo*. This was essential, in the absence of a showing under the allegations of this paragraph that appellant had knowledge at the time of the execution of the deed by the grantor that she was of unsound mind. See *Boyer* v. *Berryman, supra; Judd* v. *Gray, supra; Rohrof* v. *Schulte, supra; Burden* v. *Burden, supra.*

Appellees, in the second paragraph of the complaint, appear to have connected the mental incapacity of Catherine Faylor, of which, as alleged, appellant had knowledge, and her weak and enfeebled physical condition as therein shown, with the false or fraudulent representations made to her by appellant in furtherance of his fraudulent purpose to procure the execution of the deed of conveyance. Upon these facts they seek to base a cause of action, and, for aid or relief, address the pleading in question to the equity side of the court. The paragraph, under the facts therein alleged, may be said to travel upon the theory of fraud practiced by appellant upon the grantor in the condition in which she is shown to have been at the time of the execution of the deed of conveyance. In fact,

in the light of instructions given upon the trial, it appears that the lower court regarded this paragraph as proceeding upon the theory of fraud, and that was the one upon which it was submitted to the jury. The well-settled rule is that the theory accorded to a pleading in the lower court must be adhered to, and cannot be shifted on appeal. Elliott, App. Proc., §490; *Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574; *Oölitic Stone Co.* v. *Ridge* (1908), 169 Ind. 639.

Consequently, if we consider the paragraph in question bad upon the theory of fraud, it cannot be sustained upon any other. *Copeland* v. *Summers* (1894), 138 Ind. 219, 226.

The principal fraudulent representations made by appellant to Catherine Faylor are "that her relatives were a worthless and broken-up set, and cared nothing for her, that her nephew Peter Faylor was then engaged in an effort to send her to the poorhouse, that her niece Elizabeth Stout, who had waited upon and cared for her for a number of years prior to the time of said transfer, cared nothing for her, and was also engaged in an effort to send her to the poorhouse, and that both Peter Faylor and Elizabeth Stout, who had been actively concerned in looking after her interests, made him and her trouble every time they came upon the premises." Considered and treated as a paragraph to set aside the deed in question on account of fraud upon the part of appellant, it must be held insufficient, at least for the reason that it does not negative the truth of the alleged fraudulent or false representations made by appellant. *Clodfelter* v. *Hulett* (1880), 72 Ind. 137; *Hardy* v. *Brier* (1883), 91 Ind. 91.

Fraud is a question of fact, and is never presumed, and it has been repeatedly affirmed by the decisions of this court that in pleading fraud the facts constituting it must be specifically set forth. The employment of general epithets will not suffice to supply the place of specific facts. In the absence of any averment in the paragraph in

question to disclose that the representations made by appellant were untrue, their falsity cannot be presumed. By reason of the infirmity mentioned, if for no other, it follows that the pleading is insufficient, and the court erred in overruling the demurrer thereto.

Certain of the appellees, heirs of the deceased grantor, were, upon the trial of the cause, permitted by the lower court to testify in behalf of the plaintiffs. Appellant 10. challenges their competency as witnesses on the ground that being heirs of the deceased grantor they come within the prohibition of §522 Burns 1908, §499 R. S. 1881, 1 Thornton's Civil Code, §289. This section provides: "In all suits by or against heirs or devisees, founded on a contract with or demand against the ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor." The evidence of these witnesses related to the question of the insanity of the deceased grantor and was limited to facts and circumstances in regard to her which, during her life, came under their personal observation. Upon the facts and circumstances testified to they were permitted to express opinions as to her unsoundness of mind. The competency, under the facts, of these witnesses to testify for this purpose is settled by the decisions in *Lamb* v. *Lamb* (1886), 105 Ind. 456; *Wallis* v. *Luhring* (1893), 134 Ind. 447; *McDonald* v. *McDonald* (1895), 142 Ind. 55.

James Plessinger, on a former trial of this case, testified as a witness on behalf of appellant. Before the trial of the cause from which this appeal is prosecuted he died. 11. He had testified, among other things, that he had known the grantor, Catherine Faylor, for many years; that he had conducted some sales of personal prop-

erty for her on her farm, the last of which was in the spring
of 1899; that he had conversed with her about certain notes
which had been taken at these sales, and that she inquired
of him as to whether the sureties thereon were good.    After
detailing these facts, and others relative to her, Plessinger
appears to have expressed an opinion, based on the facts to
which he had testified, that Catherine Faylor was a person
of sound mind during all the time he had known her.    At
the trial of the case now on appeal, appellant introduced
William H. Eichhorn, a competent witness, and offered to
prove by him what was the testimony of the deceased wit-
ness given at the former trial.    The court, upon the objec-
tions of appellees, refused to allow him to testify.    The trial
judge, to sustain his ruling, stated that he would permit
the evidence given by the deceased witness to be read.    Coun-
sel for appellant earnestly insist that the court erred in not
permitting this witness to testify in respect to the testimony
of the deceased witness. Appellees seek to justify the ruling of
the trial court on the ground that the shorthand notes of
the court's official reporter, made in taking down the testi-
mony of the deceased witness at the former trial, were bet-
ter and more reliable than the recollection of a witness who
heard the testimony of the witness in question.    This argu-
ment, as against the competency of the evidence offered,
is without force.    It might have some merit if advanced in
regard to the weight to be accorded to the testimony of a
witness who testified alone from his recollection or memory,
as to what the testimony of a deceased witness was upon a
former trial.    It does not even appear from the record that
the evidence of the deceased witness given upon the previous
trial had been taken down by a shorthand reporter, or in
any manner reduced to writing.    The only information
we have that there had been a stenographic report
of the witness' testimony on the former trial is what we
derive from the brief of appellees' counsel.    Did it, how-

ever, appear that the evidence of the deceased witness had been taken down by an official reporter, nevertheless that would not warrant the ruling of the trial court in denying appellant the right to prove, if he could, by the witness whom he offered for that purpose, what was the testimony at the former trial of the deceased witness upon the issue of the grantor's sanity. In *Wabash R. Co.* v. *Miller* (1902), 158 Ind. 174, 179, we said: "It is proper to observe that we have no statute which gives legal value to the shorthand notes of an official stenographer in a subsequent trial of the same case, and when such stenographer reads his notes, or refreshes his recollection thereby, he is, in legal effect, doing nothing more nor less than repeating, to the best of his ability, what the witness said in his presence. * * * In principle, the reading from shorthand notes of what another said is the same as reading from a contemporaneous memorandum, or reciting from memory what is said." As the testimony given by the deceased witness at the previous trial was in the same cause and between the same parties, appellant was entitled to make proof thereof, if he could, by the witness whom he offered for this purpose, or by any other competent evidence. *Horne* v. *Williams* (1864), 23 Ind. 37; *Indianapolis, etc., R. Co.* v. *Stout* (1876), 53 Ind. 143; *Rooker* v. *Parsley* (1880), 72 Ind. 497; Gillett, Indirect and Collat. Ev., §188.

We are not to be understood as holding that shorthand notes of an official stenographer, embracing the evidence of a deceased witness upon a former trial of the case, are not competent to be employed in proving, in a subsequent trial of the same cause, what the testimony of such witness was. We conclude that the trial court, under the circumstances, erred in not permitting Mr. Eichhorn to testify in regard to the evidence of the deceased witness given upon the former trial of this cause.

Other questions relative to alleged errors are discussed by appellant's counsel, but it is not apparent that these will

again arise upon another trial; therefore they are not considered.

Judgment reversed, with instructions to the lower court to grant appellant a new trial and sustain the demurrer to the first and second paragraphs of the complaint, with leave, if desired, to amend the complaint and reform the issues in the case.